*Hartford,*
June, 1818.

Derby Bank
*v.*
Landon.

---

## BISHOP *against* DEXTER.

THIS was action of *assumpsit*, by the indorsee of a note, claiming, through two intermediate indorsements, against the first indorser.

The cause was tried at *New-Haven, January* term, 1818, before *Trumbull, Baldwin* and *Hosmer,* Js.

The note in question was made by *John S. Whittlesey,* payable to *Normand Dexter,* (the defendant) or order, six months from the date, and dated *September* 28th, 1815. After it fell due, *viz.* on the 16th of *April,* 1816, and after a suit had been brought upon it, in the name of the payee, in which *Whittlesey's* body was attached and committed to gaol, *Dexter,* for a valuable consideration, sold and indorsed it to *Edward M. Converse.* On the 19th of the same month, *Converse* indorsed it to one *Judd;* but no valuable conside-

The indorsement of a bill or note over-due is equivalent to drawing a new bill payable at sight. *A.* made a negotiable note payable in six months from date; after it was due, and while a suit on it, in which the body of *A.* had been attached and committed to prison,

was pending, *B.* the payee, indorsed it to *C.;* shortly afterwards, *C.* indorsed it to *D.;* and *D.* to *E.,* who took it ignorant that the note was over-due when first negotiated. Held, that *E.* could not recover against *B.* without shewing demand and notice within a reasonable time.

ration for the transfer was proved. On the 1st of *August* following, *Judd,* for a valuable consideration, indorsed the note to *James Bishop,* the plaintiff, who had no knowledge of the time when *Dexter's* name was put on it, or of the fact of *Whittlesey's* insolvency.

The defendant offered evidence to prove an agreement between him and *Converse,* made at the time of the transfer, that the latter should take the note at his own risk. To the admission of this evidence the plaintiff objected; and the court ruled it out.

It did not appear, that any holder of the note, after the indorsement by *Dexter,* had made demand of payment upon the maker, or had given notice of non-payment. The plaintiff claimed, that the facts of the case, excused the holders from making such demand, and giving such notice. This claim was resisted by the defendant. The court instructed the jury, that after the sale and delivery of the note to *Bishop,* it was to him as a new bill; and, to raise a cause of action against the defendant, it is necessary that *Bishop* should have made a demand of payment upon *Whittlesey,* and have given notice of non-payment, to the defendant, within a reasonable time. As no such demand was made, and no such notice given, the jury were directed to return a verdict for the defendant; which they accordingly did.

The plaintiff moved for a new trial; and the questions of law arising on such motion were reserved in the usual manner.

*Sherman* and *Staples,* in support of the motion, contended,
1. That it was not incumbent on *Converse,* the immediate indorsee of the defendant, to make demand, and give notice. There could be no use in a demand by *Converse;* for the suit on the note which was pending at the time of the transfer to him, was of itself a constant demand. It would be equally useless to give notice to the defendant of non-payment; the default of the maker being already within the defendant's knowledge.
2. That admitting demand and notice to be requisite from the immediate indorsee of the payee, yet they were not necessary from the present plaintiff, who took the note without knowing that it was over-due when the defendant indorsed it. *Boehm & al.* v. *Sterling & al.* 7 *Term Rep.* 423. 428. 430.

*N. Smith* and *Ingersoll,* contra, remarked, that the plaintiff knew, that this note was over-due when he took it ; and that being the case, he took it subject to every defence in favour of the first indorser, to which it was subject in the hands of the party from whom he received it ; so that the only question on this part of the case is, whether demand and notice were necessary as between the first indorser and his immediate indorsee ? Now, where is the rule, or case or *dictum* to be found, that dispenses with demand and notice, because the bill is over-due when negotiated ? The law requires even more than ordinary vigilance from the holder of such a bill. *Brown* v. *Davis,* 3 *Term Rep.* 82. *Tinson* v. *Francis,* 1 *Campb.* 19. *Swift on Bills Ex.* 301. *Field* v. *Nickerson,* 13 *Mass. Rep.* 131.

SWIFT, Ch. J. It appears, that *Dexter,* the defendant, indorsed to *Converse* a negotiable note against *Whittlesey,* after it was due, and had been put in suit ; that *Converse* indorsed it to *Judd,* and *Judd* to *Bishop* the plaintiff ; that after the indorsement by the defendant, no demand was ever made of *Whittlesey* the maker of the note, and no notice ever given to the defendant. The plaintiff claims, that he has a right to recover of the defendant on his indorsement, the note never having been paid by *Whittlesey.*

The indorsement of a bill or note after due is equivalent to drawing a new bill payable at sight ; and demand must be made by the indorsee of the drawer of the bill, or maker of the note, and notice given to the indorser, as in cases of bills payable at sight. It appears, that no demand was ever made of *Whittlesey,* by any of the indorsees of the note, and no notice ever given to the defendant of the non-payment : of course, he became discharged from any liability on his indorsement.

It has been contended for the plaintiff, that when a note is indorsed by the payee after due, a subsequent indorsee, without knowledge that the first indorsement was made after the note was due, has a right to presume that a proper demand had been made, and notice given, when it fell due ; and is not bound to make demand or give notice, to enable him to recover of the first indorser. But this is not only repugnant to the principle that the indorsement after due is equivalent to drawing a new bill, and must be proceeded with

as such ; but would lead to the practice of the grossest frauds ; for the first indorsee might neglect to make demand, and give notice, by which the liability of his indorser would be discharged, and then, by a subsequent indorsement, he might create a new right in his indorsee to recover against the first indorser, after the note had been lost by his negligence.

It has been contended, that this note having been put in suit by the defendant, this was equivalent to a demand and notice ; for he knew the note would not be paid. But the indorsement put an end to the suit, as the property of the note vested in the indorsee. He was bound to proceed with it, in the same manner, as if it had not been sued. The circumstance, that the note had been put in suit, was not stronger evidence that it would not have been paid by the maker, if presented, than insolvency ; and it is agreed, that this would not excuse demand and notice.

As this point is in favour of the defendant, and he is entitled to judgment, it is unnecessary to consider the other question.

HOSMER, J. The charge to the jury, was entirely correct. It is not necessary, however, to enquire, whether the parol testimony offered to shew that *Converse* received the note to collect at his own risk, ought to have been admitted. But, as this question arises in the case, I will express my opinion upon it.

It is unquestionably clear, that if a person take a bill or negotiate a note, after it is due, he receives it on the credit of his indorser, subject to all the equities with which they are encumbered. *Chitty* 114. *Swift's Ev.* 30. *Brown* v. *Davies,* 3 *Term Rep.* 81. *Tinson* v. *Francis,* 1 *Campb.* 19. *Callaghan* v. *Sawyer,* 5 *Johns. Rep.* 118. *Boehm* v. *Sterling,* 7 *Term Rep.* 423. *Gold* v. *Eddy,* 1 *Mass. Term Rep.* 1. *Ayer* v. *Hutchins & al.* 4 *Mass. Term Rep.* 370. *Herrick* v. *Carman,* 10 *Johns. Rep.* 224. But, this principle has no bearing on the point relative to the rejection of the parol testimony. *Whittlesey* had given a negotiable note to *Dexter* after it had become due ; *Dexter* having indorsed it in blank, transferred it to *Converse* ; and *Converse,* as the defendant offered to prove, received it to collect at his own risk. Posterior to this, the note was indorsed by *Converse* to *Judd,*

and by *Judd* to the plaintiff, without any intimation, that the contract of *Dexter* was different from what it appeared to be on the note itself. A blank indorsement is an absolute transfer. *Swift's Ev.* 342. It is an agreement in writing, that if the indorsee, by the use of legal measures, cannot collect the note of the maker, the indorser, on reasonable notice, will pay it. As between the indorser and indorsee, parol testimony to contradict or vary this written engagement, cannot be admitted. 2 *Swift's Syst.* 158. And if this be correct, it will not be contended, that it is admissible against those who derive a subsequent title. Even a written contract given to the indorser, separate from the note, is valid only between the parties. 2 *Swift's Syst.* 158. Now, in the case before us, the evidence rejected was not offered to evince an equity, but to contravene a contract in writing. In my judgment, it was inadmissible in every view. The case of *Wilkinson & al.* v. *Nicklin & al.* 2 *Dall.* 396. I consider as in point. The defendants offered to shew, that a bill indorsed by them in blank, and remitted to *Crammond* & Co., indorsed to the plaintiffs, was directed by them to be credited to their account. From its having been noted for non-acceptance, and other circumstances, they proposed to contend, that the plaintiffs knew the bill was their property. The defence was not admitted. " There is" (said CHASE, J.) "no rule more perfectly established, there is none which ought to be held more sacred in commercial transactions, than that the blank indorsement of a bill of exchange passes all the interest in the bill, to every indorsee in succession, discharged from any obligation which might subsist between the original parties, but which does not appear upon the face of the instrument itself."

With respect to the necessity of demand on the maker by the indorsee, and reasonable notice to the indorser, there can exist no serious question. A bill may be negotiated after it has become due. *Chitty* 113. The indorsement of it afterwards, is equivalent to the act of drawing a bill payable at sight. *Chitty* 113. The indorser is a new drawer, and has right to insist, that the same steps should be resorted to for the collection of it, as if he had been the drawer of the bill originally. By drawing, he incurs the same legal obligation. *Lloyd* v. *Keach,* 2 *Conn. Rep.* 189. *et vid.* the cases there cited.

In the adjoining states of *Massachusetts* and *New-York*, it has recently been determined, that a note indorsed after due, must be demanded of the maker, and notice of his neglect or refusal to pay, given to the indorser in a reasonable time. *Field* v. *Nickerson*, 13 *Mass. Term Rep.* 137. *Berry* v. *Robinson*, 9 *Johns. Rep.* 121. *Agan* v. *M'Manus*, 11 *Johns. Rep.* 180. These decisions, conformed to undoubted principle, are conclusive on the question.

GOULD, J. Admitting, what, under the particular circumstances of the case, happens to be of no importance, in the result—that the plaintiff, though he received the note, when it was over-due, might have entitled himself to a recovery against the defendant, notwithstanding the agreement, alleged to have been made by *Converse ;* yet the omission of a demand upon the maker, and of notice to the defendant, forms a fatal objection to the action. It may be observed, in the first place, that the understanding of the several indorsers and indorsees, as inferable from the nature of the transaction, must have been, that, to create a right of action, upon either of the indorsements, such demand should be made, and notice given, by the indorsee. For otherwise, the liability of each indorser would be *primary* and *unconditional ;* and an action would lie against him, upon his indorsement, instantly upon its being made, without any act whatever, to be done by the indorsee, to consummate his right of recovery. And the defendant's liability would, upon this supposition, be precisely the same, as if, instead of indorsing another's note, he had given his own, payable on demand.

Now, such a result, as this, would be evidently inconsistent with the views and intention of all parties ; and equally so with the nature, and legal effect, of the transaction. The indorsing of a note, is, in substance, the same thing, as the drawing of a bill of exchange : and there is nothing to take the present case out of the general rule ; which, as the note had already become payable, required the plaintiff to make demand of the maker, within a reasonable time. For though the latter had suffered himself to be sued, it does not follow, that he would have refused payment, if demand had been duly made by the plaintiff. And as the maker was, in fact, as well as in form, the original debtor, and so regarded by all parties ; the plaintiff must be taken to have purchased the

note, with the understanding, (and so far as respects the liability of the indorsees,) upon the tacit condition, that he was to resort, in the first instance, to the maker; and of course, to conform to the general rule, in relation to demand and notice. Besides, the manifest inexpediency of multiplying exceptions to established general rules, in the mercantile law, furnishes, in my judgment, a distinct, and strong objection to the motion. Such exceptions should be admitted only for the clearest and most decisive reasons: in as much, as they tend to complicate a class of transactions, in which all practicable simplicity is eminently important; and to create uncertainty, in a branch of the law, in which it would be more mischievous, than in almost any other.

The other Judges were of the same opinion, except CHAPMAN, J. who gave no opinion, having been absent when the case was argued.

New trial not to be granted.